IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                               Case No.  18-10102-JWB

JOSE VINCENTE LIRA-RAMIREZ,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to dismiss the indictment. (Doc. 11.)
The motion is fully briefed and is ripe for decision. (Docs. 12, 14.) For the reasons stated herein,
the motion is DENIED.

### I. Background

The indictment charges in substance that on July 1, 2018, Defendant was a citizen of
Mexico who is not a citizen or national of the United States, that he had previously been removed
or deported, and that he was found in the United States after having re-entered without obtaining
the consent of the proper authorities, in violation of 8 U.S.C. § 1326 (a) and (b). (Doc. 1.)

Defendant moves to dismiss the indictment based on *Pereira v. Sessions*, 138 S. Ct. 2105
(2018) and cases interpreting that decision. He contends his removal proceeding was initiated by
a defective notice to appear of the type discussed in *Pereira* – which did not specify the date and
time of his removal hearing – and as a result the immigration court lacked jurisdiction to order his
removal. (Doc. 11 at 9.) He argues the immigration court lacked subject-matter jurisdiction such
that its order is "null and void;" consequently, he argues that he was not required to exhaust
administrative remedies or seek judicial review before challenging the order in this action. He

further argues that pursuing administrative remedies would have been futile and that confusion in the law at the time of his deportation made it futile to pursue judicial review as well. (*Id*. at 10.)

The government contends that *Pereira* "does not apply here" because, unlike the alien in *Pereira,* Defendant "successfully appeared at his removal hearing and there was no need for a notice to appear." (Doc. 12 at 3.) It argues Defendant did not need to be notified of the date and time of the removal hearing because he was in custody at the time and he requested an immediate hearing before an immigration judge. (*Id*. at 4.)

Defendant cites *United States v. Virgen-Ponce,* 320 F. Supp.3d 1164, 2018 WL 3655166 (E.D. Wash. July 26, 2018), in support of his argument that the removal order is null and void and cannot be used in a § 1326 prosecution. To date, two other decisions have followed the reasoning of *Virgen-Ponce. See United States v. Pedroza-Rocha*, No. 18-CR-1286 (W.D. Tex. Sep. 21, 2018) *and United States v. Zapata-Cortinas*, No. 18-CR-00343-OLG, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018). Three recent decisions have distinguished *Pereira* and have denied motions to dismiss a § 1326(a) indictment where the defendant received actual notice of the removal hearing and/or was present at that hearing. *United States v. Morales-Hernandez*, No. 18-00365-TUC, 2018 WL 4492377, *1 (D. Az. Sept. 18, 2018); *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503, at *2–3 (W.D. Okla. Sept. 25, 2018); *United States v. Munoz-Alvarado*, No. CR-18-171-C, 2018 WL 4762134, *1 (W.D. Okla. Oct. 2, 2018).

## II. Facts

Neither party has requested a hearing on the motion to dismiss. Both parties have attached exhibits from Defendant's removal proceeding to their briefs. Because neither side challenges the authenticity of these documents, the court accepts as uncontested the facts shown by the parties' exhibits for purposes of the instant motion.

Defendant was arrested on or about April 21, 2004, on a warrant issued by the Immigration and Naturalization Service (INS). (Doc. 12-1.) On the same date, Defendant was personally served with a Notice to Appear for a removal proceeding under the Immigration and Nationality Act (INA). (Doc. 12-5 at 1.) The notice from INS alleged that Defendant was admitted to the United States but was deportable because he was not a United States citizen; he was a citizen of Mexico who had been admitted as an immigrant at El Paso, Texas, on September 20, 1994; and he was convicted of the felony offense of possession with intent to sell cocaine on February 9, 2004, in the Sedgwick County District Court. (*Id.* at 3.) It charged that the conviction made Defendant deportable under § 237 of the INA because the offense was an aggravated felony and a violation of a law relating to controlled substances.[1] The notice stated that Defendant was ordered to appear before an immigration judge in Kansas City, Missouri, "on a date to be set at a time to be set" to show cause why he should not be removed from the United States based on the charges set forth. (*Id.* at 1.)

The notice included a statement advising Defendant of various rights, including the right to be represented by counsel at the removal proceeding and, unless requested otherwise, to not have the hearing earlier than ten days from the date of the notice to allow sufficient time to secure counsel. (*Id.* at 2.) It also informed Defendant that at the hearing, he would have the opportunity to admit or deny the allegations, to present evidence, to object to government evidence and cross-examine government witnesses, and to appeal an adverse decision by the immigration judge. It stated that the immigration judge would advise him of any relief from removal for which Defendant may appear eligible. (*Id.*) Defendant signed a section in the notice on April 21, 2004,

---

[1] *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (alien convicted of aggravated felony is deportable) and 8 U.S.C. § 1227(a)(2)(B)(i) (alien convicted of controlled substance offense is deportable).

requesting "an immediate hearing" and waiving his right to have a ten-day period before appearing before an immigration judge. (*Id*. at 2.)

Documents from Defendant's INS file include copies of Defendant's 2004 felony conviction in Sedgwick County District Court for possession of cocaine with intent to sell in violation of K.S.A. § 65-4161(a). (Doc. 12-4.)

The government cites evidence that on April 21, 2004, Defendant signed a waiver form requesting that his removal hearing be conducted on written record without a hearing; admitting the allegations in the notice to appear; conceding he was subject to deportation; waiving the right to apply for relief from removal; acknowledging that he will no longer be a lawful permanent resident and will not be able to live in the United States; acknowledging he will need to reapply for admission to the United States in the future and may not be eligible for admission to the United States in the future; agreeing to accept a written order for removal to Mexico as a final disposition of the proceedings and waiving "my rights to appeal this removal order or to challenge it in any other proceedings"; and representing that he executed the request for removal voluntarily and knowingly, with a full understanding of its consequences. (Doc. 12-6.) The attachment provided by the government apparently includes only a portion of the waiver form (*see* Doc. 12-6 at 4-7), but an immigration officer certified that he read, explained, and provided a complete copy of the document to Defendant. (*Id.* at 7.) The INS also certified that it would accept a written order of removal as a final disposition and waived its right to appeal. (*Id.)*

On April 26, 2004, an immigration judge in Chicago, Illinois, entered a written order directing that Defendant be removed from the United States to Mexico. (Doc. 12-6 at 2.) The order noted the charges against Defendant in the April 21, 2004, Notice to Appear; found Defendant had submitted a statement waiving a hearing and admitting the charges; found Defendant admitted the

allegations and conceded he was ineligible or would not apply for relief, and had requested removal to Mexico; and found that an appeal had been waived by the parties. (*Id.*)

**III. Summary of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018)**. The background to *Pereira* is as follows. Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), aliens who are subject to removal proceedings may be eligible for cancellation of removal if, among other things, they have been physically present in the United States for a continuous period of ten years or more. 8 U.S.C. § 1229b(b)(1)(A). But under this so-called "stop-time rule," the period of continuous presence is deemed to end when the alien "is served a notice to appear under section 1229(a)." *Id.* § 1229b(d)(1).

Section 1229(a) provides that the government will serve the alien a written "notice to appear" specifying, among other things, the time and place at which removal proceedings will be held. *Id.* § 1229(a)(1)(G)(i). In recent years, the Department of Homeland Security has issued notices that do not specify a time or date, but state that the initial removal proceeding will take place on a date and time "to be set." Pereira, a citizen of Brazil who overstayed his visa, was served such a notice. *Pereira*, 138 S. Ct. at 2112. About a year later, the immigration court mailed Pereira a more specific notice setting the date and time of the initial hearing, but the notice was sent to the wrong address.[2] As a result, Pereira failed to appear and the immigration court ordered him removed in absentia. Several years later, Pereira was arrested and the immigration court reopened the removal proceeding. When Pereira applied for cancellation of removal and argued he had been continuously present in the United States for more than ten years, the immigration

---

[2] The Department adopted a regulation stating that in removal proceedings, the Immigration Service shall provide the date, place, and time of the removal proceeding in the notice to appear "where practicable." If that information is not contained in the notice to appear, the immigration court shall be responsible for scheduling the initial removal hearing and for providing notice to the government and to the alien of the date, place, and time. 8 C.F.R. § 1003.18(b).

court denied his application on the grounds that the notice to appear had interrupted the ten-year period under the stop-time rule. *Id.*

The Supreme Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under § 1229(a)' and therefore does not trigger the stop-time rule." *Pereira*, 138 S. Ct. at 2110. The Court relied on the definitional nature of § 1229(a), which makes clear the notice to appear contemplated in that provision is one that contains specific information, including the date and time of the removal proceeding. The Court observed that § 1229(a)(2), which addresses *changes* in the time and place of removal proceedings, allows the government to give notice specifying a new time or place of the proceedings, which presupposes that the government has already specified an initial time and place. The Court further pointed out that § 1229(b)(1):

> gives a noncitizen "the opportunity to secure counsel before the first [removal] hearing date" by mandating that such "hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear." For § 1229(b)(1) to have any meaning, the "notice to appear" must specify the time and place that the noncitizen, and his counsel, must appear at the removal hearing.

*Id.* at 2114-15. Otherwise, the government could give an initial notice of a hearing "to be set" and then, one day before the hearing, specify the date and time, and thereby deprive the noncitizen of a meaningful opportunity to obtain and have prepared counsel. *Id.* at 2115.

**IV. Discussion**

The starting point for analyzing a challenge to a deportation order in a § 1326 prosecution must be § 1326(d). As the Tenth Circuit noted, Congress has imposed specific limitations on an alien's right to collaterally attack an underlying deportation order on a charge of illegal reentry:

> To collaterally attack a deportation order, an alien must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3)

the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The defendant bears the burden of proof.

*United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) (citations omitted.)  Because the requirements of § 1326(d) are in the conjunctive, a defendant must satisfy all three to prevail. *See United States v. Lopez-Collazo*, 824 F.3d 453, 458 (5th Cir. 2016).

Section 1326(d) was Congress's response to *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). In *Mendoza-Lopez*, the Supreme Court examined the prior version of § 1326 and acknowledged that Congress did not intend to permit *any* challenge to the validity of an underlying deportation order in a § 1326 prosecution. *Id*. at 837. But where an administrative determination plays a critical role in a criminal sanction, the court said, due process requires that there must be *some* meaningful review of the administrative proceeding. *Id.* at 837-38 (emphasis in original) (citations omitted). This means "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to conclusively establish an element of a criminal offense." *Id*. at 838. "Depriving the alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id*. at 839. After setting forth that principle, the Supreme Court turned to whether a deprivation of judicial review had occurred, and concluded that it did:

If the violation of respondents' rights that took place in this case amounted to a complete deprivation of judicial review of the determination, that determination may not be used to enhance the penalty for an unlawful entry under § 1326. We think that it did. The Immigration Judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation. Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation

proceeding. The Government may not, therefore, rely on those orders as reliable
proof of an element of a criminal offense.

*Id.* at 840.

Defendant's notice to appear was clearly defective under *Pereira*, as it did not include a specific date and time to appear. *Pereira*, 138 S. Ct. at 2110 ("A notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule" of § 1229b(d)(1)(A)). But that fact alone does not satisfy § 1326(d). The first prerequisite for collateral review of a removal order requires Defendant to show that he exhausted any available administrative remedies "that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1). Federal regulations provide that the removal order of an immigration judge may be appealed to the Board of Immigration Appeals. 8 C.F.R. § 1003.3(b). The undisputed facts before the court are that Defendant waived his right to appeal the immigration judge's 2004 order. "An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)." *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005). Defendant does not allege that his waiver was not knowingly entered; he therefore fails to show an essential element of collateral review under § 1326(d).

The second prerequisite for collateral review in § 1326 requires Defendant to show that the deportation proceedings "improperly deprived [him] of the opportunity for judicial review." § 1326(d)(2). In *Mendoza-Lopez*, the alien was deprived of the chance for judicial review by faulty advice from the immigration judge, because the advice led the alien to make an unknowing waiver of his right to appeal. In this case, Defendant does not argue he was deprived of the opportunity for judicial review; he contends the immigration court's lack of jurisdiction excuses him from showing such a deprivation (as well as excusing the obligation to exhaust administrative remedies.)

Such reasoning, however, is contrary to the express limitations adopted by Congress in § 1326(d) and contrary to the Supreme Court's explanation in *Mendoza-Lopez* of when due process requires allowing collateral review in a § 1326 prosecution. The standard is not whether the deportation order was valid, but whether Defendant was deprived of the opportunity to have it reviewed by an Article III court.

A review of relevant statutes shows that Defendant was provided with the opportunity for judicial review of his removal order. Congress has specified that general removal orders (with exceptions not applicable here) are subject to judicial review under Title 28, Chapter 158, with a petition for review filed with the appropriate court of appeals being the exclusive means for judicial review of an order of removal. 8 U.S.C. § 1252(a)(1). Upon the filing of a petition for review, the court of appeals has exclusive jurisdiction to enter a judgment "determining the validity of, and enjoining, setting aside, or suspending … the order of the agency." 28 U.S.C. § 2349(a). The scope of judicial review may have been circumscribed in Defendant's case because the removal order was based on an aggravated felony and controlled substance offense. Section 1252(a)(2)(C) provides in part that no court shall have jurisdiction "to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section … 1227(a)(2)(A)(iii) [or] (B)…."[3] But nothing in that provision "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *Id.*, § 1227(a)(2)(D). Judicial review "of all questions of law and fact, including interpretation of constitutional and statutory provisions, arising from any … proceeding brought to remove an alien from the United States … shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). And

_____

[3] See footnote 1, *supra*.

except as otherwise provided in the same section, "no court shall have jurisdiction … by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." *Id*. Finally, Congress mandated that a court may review a final order of removal only if the alien "has exhausted all administrative remedies available to the alien as of right…." *Id.* § 1252(d)(1). The governing statutes thus provided Defendant with the opportunity for obtaining judicial review of his removal order.

Some courts have held a defendant can establish the first two prongs of § 1326(d) by showing "that he was denied judicial review of his removal proceeding in violation of due process" or that "immigration officials in the underlying removal proceeding violated a regulation designed to protect an alien's right to judicial review." *United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014) (citations omitted.) Defendant makes no such showing here. Administrative remedies and judicial review were available to Defendant at the time of his removal, but he chose to waive the opportunity to challenge the removal order or to appeal from it. That is true, moreover, notwithstanding that the legal issue he now asserts was uncertain at the time of his removal. *See United States v. Rivera-Nevarez*, 418 F.3d 1104, 1109 (10th Cir. 2005) (judicial review barred in § 1326 prosecution where defendant could have, but did not, appeal unsettled question of law in immigration proceeding to the circuit court of appeals). Again, Defendant does not argue his waiver was not knowingly made. Under the circumstances, Defendant has made no showing that the 2004 deportation proceeding "improperly deprived [him] of the opportunity for judicial review" as required by § 1326(d)(2).

The third prerequisite of § 1326(d) requires Defendant to show that entry of his 2004 removal order was fundamentally unfair. "An underlying order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding,

and (2) he suffered prejudice as a result of the defects." *United States v. Vargas-Ortiz*, 667 F. App'x 699, 700 (10th Cir. 2016) (quoting *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014)); *United States v. Guardado-Diaz*, ___F. App'x ___, 2018 WL 2688260 (4th Cir. 2018) (same). Due process requires that an alien who faces removal be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard. *See United States v. El Shami*, 434 F.3d 659, 665 (4th Cir. 2005) (citing *United States v. Torres*, 383 F.3d 92, 104 (3rd Cir. 2004)). In other words, due process guarantees "an opportunity to be heard at a meaningful time in a meaningful manner." *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013) (citation omitted). To demonstrate prejudice, Defendant must demonstrate "a reasonable likelihood that, but for the errors complained of, he would not have been deported." *Aguirre-Tello*, 353 F.3d at 1208 (citation omitted).

As the Supreme Court indicated in *Pereira*, the failure of a notice to specify the date and time of a removal hearing could prejudice an alien by causing him to miss a hearing, by depriving him of the time or incentive to find counsel, or by depriving the alien (or counsel) of time to prepare for the hearing. *Pereira*, 138 S. Ct. at 2115 (without informing alien of the time of the hearing "the Government cannot reasonably expect the noncitizen to appear for his removal proceeding.") Defendant does not dispute that, unlike the alien in *Pereira*, he waived the right to be present at the removal hearing. He does not allege that the lack of notice caused him to miss the hearing or deprived him of the time needed to find counsel or prepare for the hearing. He does not argue that he did not knowingly waive his right to appear or to have counsel present at the hearing. Nor does he claim that he was not subject to deportation under the standards of the INA or that he would have obtained relief from deportation were it not for the defective notice. Absent from the motion is any suggestion that he suffered prejudice from the lack of notice, which means Defendant's

collateral challenge to the 2004 removal order is also barred by § 1326(d)(3). *See Aguirre-Tello*, 353 F.3d at 1207 ("to enable us to reach the ultimate conclusion that the deportation proceeding was fundamentally unfair, [defendant] would still have to demonstrate that any errors that occurred prejudiced him.") In sum, there was no prejudice from the notice's failure to specify the date and time of the removal hearing because Defendant waived the opportunity to attend or participate in the hearing. *Cf. Guamanrriga v. Holder*, 670 F.3d 404, 409 (2d Cir. 2012) (service of a notice that does not specify date and time of a hearing, followed by service of a separate notice specifying those matters, satisfies the notice requirements of 8 U.S.C. § 1229(a)(1)); *United States v. Nicki*, 427 F.3d 1286, 1296 (10th Cir. 2005) (citing *Long v. Bd. of Governors of the Fed. Reserve Sys.*, 117 F.3d 1145, 1158 (10th Cir. 1997) ("To establish a due process violation, an individual must show he or she has sustained prejudice as a result of the allegedly insufficient notice.")).

Defendant relies on *Virgen-Ponce*, and presumably similar cases such as *Pedroza-Rocha*, and their rationale that the lack of a proper notice to appear deprives the immigration court of "subject-matter jurisdiction," a defect that "cannot be waived" and which results in prejudice because deportation "would not have happened but for the immigration court's error in ordering [the alien] deported when the court lacked the authority to do so." *Pedroza-Rocha*, slip op. at 10. *See also Zapata-Cortinas,* 2018 WL 4770868, *4-5. The court finds these rulings unpersuasive. Even assuming the immigration court lacked "subject-matter jurisdiction"[4] or acted beyond its

---

[4] The *Virgen-Ponce* line of cases relies on 8 C.F.R. § 1003.14(a) as showing that an immigration court is without subject-matter jurisdiction in the absence of a notice to appear that meets the requirements of 8 U.S.C. § 1229(a). The foregoing regulation states that "jurisdiction vests" and removal proceedings commence when a charging document is filed with the immigration court by the INS. Like the subject-matter jurisdiction of the federal courts, however, the immigration court's authority over a given subject matter is determined by federal statute - not by acts taken by INS or other Executive Branch agents - and Congress has specifically authorized immigration judges to conduct removal proceedings and to decide whether an alien is removable under the immigration laws. *Id.*, § 1229a(a) & (c). *Cf. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (subject-matter jurisdiction is a constitutional and statutory requirement; no action of the parties can confer subject-matter jurisdiction.) The regulation cited above goes on to state that the charging document must include a certificate showing service on the opposing party. 8 C.F.R. § 1003.14(a). That requirement is analogous to service of process in federal court, and is an

statutory authority by ordering Defendant's removal in 2008, that still would not exempt the removal order from the requirements of § 1326(d). Section 1326(d) prohibits an alien from "challeng[ing] the validity of the deportation order" unless, among other things, the alien demonstrates that the deportation proceedings "improperly deprived [him] of the opportunity for judicial review."[5] In the instant case, Defendant could have appealed the removal order and could have asked an immigration court or the circuit court of appeals to declare the order void. He waived that opportunity. *Virgen-Ponce* and *Pedroza-Rocha* do not explain what authorizes a district court in such circumstances to set aside statutory limitations on the district court's authority to collaterally review a removal order.[6] To be sure, due process requires allowing judicial review in a § 1326 prosecution where a deportation proceeding "effectively eliminate[d] the right of the alien to obtain judicial review." *Mendoza-Lopez,* 481 U.S. at 839. But Defendant's right to obtain

---

indication that the regulation is addressing the immigration court's acquisition of personal jurisdiction over the person for purposes of a removal proceeding. *See Compagnie des Bauxites*, 456 U.S. at 703 (personal jurisdiction protects an individual liberty interest; it requires that maintenance of the suit not offend traditional notions of fair play and substantial justice); *Oklahoma Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served").

[5] In contrast to *Mendoza-Lopez*, in *Lewis v. United States*, 445 U.S. 55 (1980), the Supreme Court said Congress could prohibit a collateral challenge to a state court conviction used as a predicate felony for a charge of unlawful possession of a firearm by a convicted felon. The Court so held despite the state conviction having been "uncounseled and therefore obtained in violation of the Sixth and Fourteenth Amendment rights of the defendant." *See Mendoza-Lopez*, 481 U.S. at 840 (citing *Lewis*, 445 U.S. at 67.) The difference between these two cases turned on the *availability* of judicial review prior to the federal criminal proceeding. Whereas the defendant in *Lewis* had the opportunity to challenge his predicate conviction in a judicial forum before he obtained a firearm, the "fundamental procedural defects of the deportation hearing … rendered direct review of the Immigration Judge's determination unavailable" to the alien in *Mendoza-Lopez. Id.* at 841.

[6] These two decisions held that a defendant did not have to show exhaustion or a deprivation of judicial review because the removal order was "void," whereas *Zapata-Cortinas* found the § 1326(d) requirements were "satisfied" and the defendant "was deprived of an opportunity for meaningful judicial review." *Zapata-Cortinas,* 2018 WL 4770868, *5. The latter court did not explain how the defendant was deprived of judicial review. None of these decisions drew any distinction between judicially-created exhaustion requirements and those imposed by Congress. But the case cited by *Virgen-Ponce* as supporting excusal of the exhaustion requirement, *United Farm Workers of Am., AFL-CIO v. Arizona Agr. Employ. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982), noted that application of the exhaustion doctrine was within the court's discretion "[u]nless it is specifically required by statute." *Cf. McKart v. United States*, 395 U.S. 185, 206 (1969) (White, J. concurring) ("Undoubtedly, Congress could require such exhaustion as a prerequisite to judicial review … but Congress has not chosen to do so" in the Selective Service Act).

judicial review was not "eliminated" by defects in his removal proceeding; under the facts before the court he knowingly waived his right to obtain judicial review.

Congress made clear by adopting § 1326(d) that knowingly giving up the opportunity for judicial review in a removal proceeding precludes an alien from challenging the validity of the removal order in a § 1326 prosecution. The *Virgen-Ponce* line of cases nullifies this statutory limitation by declaring the removal order void for lack of subject-matter jurisdiction, and in doing so they effectively ignore the limitations Congress imposed on their own jurisdiction. *See United States v. Adams-Orozco,* 607 F.3d 647, 652 (10th Cir. 2010) ("Where, as here, the statute's language is plain and plainly satisfied, 'the sole function of the courts' can only be 'to enforce it according to its terms.'") *Cf. Kern v. Securities & Exchange Comm.*, 724 F. App'x 687, 688 (10th Cir. 2018) ("a challenge to the agency's lack of jurisdiction does not extend our *appellate* jurisdiction to entertain an untimely petition for review.") Defendant has not shown that defects in his removal proceeding improperly deprived him of the opportunity for judicial review of his removal order. That failure precludes a collateral challenge to the order in this proceeding.

**IT IS THEREFORE ORDERED** this 15th day of October, 2018, that Defendant's motion to dismiss the indictment (Doc. 11) is DENIED.

___s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE